DONALD COOPER, APPELLANT, *v.* PACIFIC AUTO-MOBILE INSURANCE CO., RESPONDENT.

No. 10245

November 30, 1979          603 P.2d 281

*Keefer, Clark & O'Reilly,* and *R. Steven Young,* Las Vegas, for Appellant.

*Beckley, Singleton, Delanoy & Jemison, Chtd.,* and *Robert D. Vannah,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Respondent, plaintiff below, commenced this action in conversion against appellant, Donald Cooper, and Melvin Kramer. Following trial, judgment was rendered only against appellant Cooper, as Kramer was unavailable. Two issues confront us in this appeal. They are: (1) Whether the trial court erred in its determination that appellant is not a bona fide purchaser and by not adequately setting forth its findings; and (2) whether respondent stated a claim for relief and adequately proved the elements of its cause of action.

On April 29, 1977, Mr. Harry Gordon was contacted by Melvin Kramer, aka, Fred Schiller. Gordon, a partner with Independent Home Supply Company, had advertised in the Los Angeles Times as being for sale a 1976 Cadillac. Independent Home Supply was the true owner of the automobile. Gordon was selling the vehicle for the company.

Kramer, who represented himself to be Fred Schiller, offered to buy the car from Gordon for $8,100. The transaction took place at Gordon's home on Friday, April 29. Payment was made by Kramer with what appeared to be a valid cashier's check for the full amount. This cashier's check was made out to Independent Home Supply Company. Gordon signed the pink slip, dated it and filled out the motor vehicle transfer slip.

Gordon, who had only seen Kramer that Wednesday when he test drove the automobile, did not ask for any identification at the time of the purchase. Mr. Gordon testified that Kramer made a presentable appearance and gave no reason for Gordon to suspect him. The sale took place in Los Angeles where Gordon lived and where Independent Home Supply is located.

On April 30, 1977, a Saturday, Kramer was in Las Vegas and contacted a Mr. Pete Kubena, an automobile dealer. Kramer had attempted to sell the car to Kubena for $6,000. Kubena contacted Gordon apparently to find out the circumstances of the sale that previous day. At that time, Gordon became suspicious and more closely scrutinized the cashier's check. Gordon then went to a neighbor who was a banker and was told that the check was bad. Gordon contacted the Los Angeles police the following day.

Kramer, unsuccessful in his attempt to sell the car to Kubena, went down the street to Lee's Ranch House Bar, which is owned by appellant Cooper. Kramer asked Cooper if he knew of a car dealer in the area who may be interested in purchasing the automobile. Appellant was informed of Kramer's purchase the previous day for $8,100 and was also told that one car dealer had offered Kramer $7,000 for the car, but that Kramer would have to wait until Monday for the money. After showing the car to appellant, Kramer offered to sell the car for $6,000. Kramer had explained to appellant that he had had a bad streak of luck and that he lost $15,000 gambling and wanted to sell the car. Appellant offered Kramer $5,000 cash and the sale was consummated. Kramer furnished appellant with three sets of keys, the title, handbook and the original price sticker on the car. Kramer also gave appellant the owner's certificate, a bill of sale he wrote out himself, a smog inspection certificate, and the registration. Appellant also saw a California driver's license with Kramer's photograph and signature. Although appellant observed that the original title had been with Independent Home Supply Company, he did not question the fact that the title had been signed over to Kramer by Mr. Gordon. Appellant made no independent effort to verify any of the information given to him, allegedly because the sale took place on a weekend, and also testified that nothing about the transaction made him suspicious. Appellant registered the vehicle with the Department of Motor Vehicles on May 2, 1977. On approximately May 5 or 6 appellant learned that he had purchased the fraudulently obtained vehicle.

After Pacific Automobile Insurance Company paid Gordon for the loss, it instituted the instant action to regain possession of the automobile pursuant to its right to subrogation under

the insurance contract. The findings of fact state that the delivery of the Cadillac from Gordon to Kramer [Schiller] was in transaction made him suspicious. Appellant registered the exchange for a cashier's check which was later dishonored; that Kramer delivered the Cadillac to appellant in exchange for $5,000; and that appellant was not a good faith purchaser for value.

*1. Bona fide Purchaser.*

Nevada law provides that "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value" even if that first person obtained the property "in exchange for a check which is later dishonored. . . ." NRS 104.2403(1)(b). Upon review it must be determined whether appellant's status was a question of fact or law. Of course, whether or not a purchaser had notice of an outstanding claim or was buying in good faith is a factual determination. Golden v. Oahe Enterprises, Inc., 240 N.W.2d 102, 112-13 (S.D. 1976). *See* Riverside National Bank v. Law, 564 P.2d 240 (Okla. 1977); Landrum v. Armbruster, 220 S.E.2d 842 (N.C.App. 1976); Lane v. Honeycutt, 188 S.E.2d 604 (N.C.App.), *cert. denied,* 190 S.E.2d 466 (N.C. 1972). The trial court stated as a finding of fact that appellant was not a good faith purchaser.

We must now determine whether there was sufficient evidence to support the finding that appellant was not a bona fide purchaser and whether the court properly set forth its findings in its judgment. Our rules of civil procedure require that in any case "tried upon the facts . . . the court shall find the facts specifically and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. . . ." NRCP 52(a). Here, the only findings of fact were that the reasonable market value was $8,100, the first sale was in exchange for a counterfeit cashier's check, the delivery of the car to appellant was for $5,000 cash, and appellant was not a bona fide purchaser. The court explicates no other facts in support of its determination.

This court has previously held that in the absence of express findings it will imply findings where the evidence clearly supports the judgment. Gorden v. Gorden, 93 Nev. 494, 496, 569 P.2d 397, 398 (1977). We note that the trial court, at the conclusion of the trial, stated that "the manner in which the car was sold, unfortunately, to [appellant], cried out for [appellant] to be careful." Here, the sale was for cash; was consummated in the nighttime and on a weekend; and, took place at a

bar. Moreover, appellant made no effort to verify any of the information given to him. From the record before us it may be implied that the lower court found that appellant should have been on notice of an outstanding claim and was thus not buying in good faith. The judgment of the lower court is supported by the evidence. Richfield Oil Corp. v. Harbor Insurance Co., 85 Nev. 185, 192, 452 P.2d 462, 467 (1969); Chisholm v. Redfield, 75 Nev. 502, 508, 347 P.2d 523, 526 (1959).

*2. The Claim and Proof.*

Appellant next contends that respondent's complaint failed to state a claim for relief and that respondent failed to prove the elements of its cause of action. Appellant has failed to cite any relevant authority in support of this contention. In view of this failure, we may opt not to consider the assignments of error. Plankinton v. Nye County, 95 Nev. 12, 588 P.2d 1025 (1979); Werner v. Shoshone Coca-Cola Bottling Co., 91 Nev. 286, 535 P.2d 161 (1975). In any event, our inspection of the record reveals that no error was committed. *See* Conley v. Gibson, 355 U.S 41, 45–46 (1957); Williams v. United Credit Plan of Chalmette, Inc., 526 F.2d 713, 714 (5th Cir. 1976); Taylor v. State & University, 73 Nev. 151, 153, 311 P.2d 733, 734 (1957). *See also* NRCP 8(a), 15(b); NRAP 31(c).

The judgment is affirmed.