Opinion by
 

 Judge CASEBOLT.
 

 In this declaratory judgment action involving the ownership of motor vehicles, defendants, Johnny Mascarenas and Nathan Schlegel, appeal the trial court's order denying their request to conduct discovery and the summary judgment entered in favor of plaintiff, Keybank, National Association (Keybank). We affirm.
 

 The following facts are undisputed. Defendants consigned their cars to a used-car dealer and authorized him to sell the vehicles. The dealer engaged in a scheme in which he procured used cars on consignment from their owners, sold the cars to new purchasers, and then kept the proceeds of the sale rather than remitting the proceeds to the consignors. When the county clerk and recorder learned of the fraudulent activity, she refused to transfer record title to the vehicles sold by the dealer.
 

 Keybank had loaned money to individuals to purchase vehicles from the dealer, intending to obtain liens on the vehicles to secure the loans. When the clerk and recorder refused to transfer title to the vehicles, Key-bank instituted this action seeking a judgment declaring that the new purchasers were the rightful owners of the vehicles. It also sought an order compelling the clerk and recorder to register title to the vehicles in the names of the purchasers, subject to Key-bank's liens. In addition, Keybank filed a request for a speedy hearing under C.R.C.P. 57(m), asserting that the case should be advanced on the docket because the purchasers had possession of the vehicles but could not register them, while the consignors had record title to the vehicles but were without possession.
 

 Keybank asserted that the Uniform Commercial Code (UCC) applied to the transactions and that, under § 4-2-4038, C.R.S.2000, which deals with entrustment of goods, its borrowers were the rightful owners of the vehicles. Defendants asserted that the dealer had stolen their vehicles and that, under § 18-4-405, C.R.S.2000, they retained ownership of the vehicles.
 

 To expedite the proceedings, the court ordered the parties to submit a set of stipulated facts and briefs on cross-motions for summary judgment. Concluding that § 4-2-403 was applicable and that the new purchasers were the rightful owners of the vehicles, the court granted summary judgment in favor of Keybank. It ordered the clerk and recorder to register the vehicles in the new purchasers' names, subject to Keybank's liens.
 

 The clerk and recorder and the new purchasers were parties in the trial court but have not appeared in this appeal.
 

 
 *213
 
 I.
 

 Defendants contend the trial court erred in determining that § 4-2-4038 is applicable here, rather than § 18-4-405. We disagree.
 

 Appellate review of a summary judgment is de nmovo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board, 901 P.2d 1251 (Colo.1995). What law applies presents a question of law for a court to decide. See Johnson v. Regional Transportation District, 916 P.2d 619 (Colo.App.1995).
 

 A.
 

 At common law and under the Uniform Sales Act, the mere entrustment of goods to a merchant engaged in selling goods of the kind did not prevent the owner from recovering them from a bona fide purchaser for value who purchased them from the merchant on the assumption that the merchant had the power to transfer good title. However, the provisions of § 4-2-4038 of the UCC reverse this rule. Executive Financial Services, Inc. v. Pagel, 288 Kan. 809, 715 P.2d 381 (1986); 5 W. Hawkland, Uniform Commercial Code Series § 2-403:07 (1999).
 

 Section 4-2-4083, C.R.S8.2000, of the UCC provides in pertinent part that:
 

 (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business.
 

 (8) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
 

 These sections of the UCC in effect provide that the leaving of property with a merchant who customarily sells that kind of goods clothes the merchant with either apparent ownership or apparent authority to sell the goods. They specify that any entrusting of possession of goods to a merchant who deals in such goods accords the merchant the power to transfer all of the entrus-ter's rights to a buyer in the ordinary course of business. 4 R. Anderson, Uniform Commercial Code § 2-403:90 (8d ed.1997).
 

 The overall policy underlying this provision is to restrict impediments to the free flow of commerce when buyers in the ordinary course of business are involved. Cugnini v. Reynolds Cattle Co., 687 P.2d 962 (Colo.1984). Thus, as between the entruster and the buyer, the risk of the dishonesty of the dealer is to be borne by the entruster. Executive Financial Services, Inc. v. Pagel, supra. And, the purchaser from the entrus-tee-dealer is not affected by any breach of fiduciary duty of the entrustee owed to the entruster, whether it is a breach in the making of the sale, or in failing to remit the proceeds of the sale to the entruster. See 4 R. Anderson, supra, § 2-403:131; Coffman Truck Sales v. Sackley Cartage Co., 58 Ill.App.3d 68, 15 Ill. Dec. 554, 373 N.E.2d 1026 (1978).
 

 Here, it is undisputed that defendants delivered their vehicles to the used-car dealer within the meaning of § 4-2-403(3), see § 4-1-201(14), C.R.S.2000 (delivery means voluntary transfer of possession), and that they acquiesced in his retention of them. Indeed, defendants specifically consigned their vehicles to the dealer. See Zuckerman v. Guthner, 105 Colo. 176, 96 P.2d 4 (1939) (consignment occurred where owner of automobiles delivered them to dealer who was authorized to sell them and to pay purchase money to owner). Hence, an entrustment occurred within the meaning of § 4-2-4038. See Mattek v. Malofsky, 42 Wis. 2d 16, 165 N.W.2d 406 (1969) (entrustment occurred when owner authorized son to put car out for display and son delivered it to a licensed used-car dealer who put it on display for sale).
 

 It is also undisputed that the dealer dealt in goods of the kind and that the dealer sold the vehicles to buyers in the ordinary course of business. Accordingly, unless the operation of § 4-2-4083 is somehow precluded, the dealer had power to transfer defendants' ownership rights in the vehicles, and the new purchasers became their rightful owners.
 

 
 *214
 
 B.
 

 Defendants contend that the entrustment provisions are defeated by the operation of § 18-4-405, C.R.S.2000, which provides, in pertinent part, that "all property obtained by theft ... shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property."
 

 As noted in Cedar Lane Investments v. American Roofing Supply of Colorado Springs, Inc., 919 P.2d 879 (Colo.App.1996), § 18-4-405 permits the rightful owner of property to recover stolen property in the possession of another person, even if the person in possession is a bona fide purchaser for value. However, we conclude that the statute is not applicable here.
 

 As noted in the Official Comment to § 4-2-408, the principles embodied in the en-trustment statute "are ... freed from any technicalities depending on the extended law of larceny; such extension of the concept of theft to include trick, particular kinds of fraud, and the like is for the purpose of helping conviction of the offender; it has no proper application to the long-standing policy of civil protection of buyers from persons guilty of such trick or fraud."
 

 Thus, it is clear that, when an en-trustment. occurs within the meaning of the statute, the fact that the entrustee procured the entrustment through larceny, trick, or fraud punishable under the criminal law does not defeat the ability of a merchant-entrustee to transfer title to the goods to a buyer in the ordinary course of business. See Cugnini v. Reynolds Cattle Co., supra (entrusting of possession within the meaning of § 4-2-403 "includes everything short of armed robbery, and larceny is expressly approved"); Jernigan v. Ham, 691 SW .2d 558 (Tenn.App.1984) (larceny by trick is defined as theft by fraud or deception. Once property is voluntarily delivered, it cannot be procured by theft in the ordinary sense of the term; larceny by trick does not fall into the category of ordinary theft).
 

 With ordinary theft, a physical taking of which the owner is unaware occurs, see Hodges Wholesale Cars v. Auto Dealer's Exchange, 628 So.2d 608 (Ala.1993), and the owner has no intention to part with his or her property. However, in the case of fraud or larceny by trick, the owner willingly entrusts his or her property to the hands of another for some purpose, unaware that he or she is being deceived. See Jernigan v. Ham, supra (the distinction between theft and fraud in the context of § 4-2-4083 of the UCC is found in the definitions of delivery and purchase. Delivery concerns a "voluntary transfer of possession" under the UCC).
 

 We therefore conclude that "theft" as used in § 184-405 does not encompass a larceny by trick or fraud, even if punishable under the criminal law, in which a person voluntarily delivers possession of his or her property under an agreement, giving the perpetrator authority to sell it under the UCC. Accordingly, here, under the undisputed facts, the dealer did not steal defendant's property within the meaning of § 18-4-405, even though he acted dishonesﬂy. Defendants voluntarily transferred possession of their vehicles to the dealer. Such a voluntary transfer means that an entrustment that invested power in the dealer to transfer title occurred, not a theft within the meaning of § 184-405.
 

 Hence, the trial court did not err in determining that § 4-2-408 applied here, rather than the provisions of § 18-4-405.
 

 We specifically note that neither party has raised, nor do we address, how, if at all, the provisions of the Certificate of Title Act, § 42-6-101, et seq., C.R.8.2000, would affect this result.
 

 IL
 

 Defendants contend the trial court violated the Colorado Rules of Civil Procedure and their right to due process by denying their request to conduct discovery and ordering the parties to submit the case upon a set of stipulated facts. We disagree.
 

 A.
 

 Discovery rulings, including rulings limiting discovery, are within the discretion of the trial court and will not be disturbed on
 
 *215
 
 review absent an abuse of discretion. Tallitsch v. Child Support Services, Inc., 926 P.2d 148 (Colo.App.1996).
 

 An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. Hock v. New York Life Insurance Co., 876 P.2d 1242 (Colo.1994).
 

 Under CRCP. 57(m), a court may order a speedy determination of an action for declaratory judgment and may advance it on the calendar. When a matter is expedited, case management provisions and rules governing discovery do not apply. See C.R.C.P. 16(a); C.R.C.P. 26(a).
 

 Here, the trial court expedited the case and ordered the parties to submit a set of stipulated facts and briefs on eross-mo-tions for summary judgment so that it could determine the matter. It did not enter any additional case management order or provide for any discovery to be done.
 

 The parties agreed that the issue in the case was whether a purchaser of a vehicle acquires an interest superior to that of the person entrusting the vehicle to a selling dealer when the dealer fails to remit proceeds of the sale to the entrusting party. And, the parties in fact were able to agree upon the key facts that were required to make this determination. As defendants acknowledge, a court undoubtedly has the authority to direct the parties to ascertain what facts are undisputed and to file a stipulation of those facts for purposes of summary judgment.
 

 Furthermore, because C.R.C.P. 16 and 26 do not apply in expedited cases such as this one, the court did not violate those rules when it declined to enter a further case management order or to allow discovery.
 

 Accordingly, no abuse of discretion occurred here.
 

 B.
 

 Defendants nevertheless assert that the court erred in failing to allow discovery when they filed an affidavit under C.R.C.P. 56(f). We disagree.
 

 When a motion for summary judgment is made and supported as provided by C.R.C.P. 56, the opposing party's response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. C.R.C.P. 56(e).
 

 When a party opposing a motion for summary judgment cannot present facts essential to justify its opposition, the party may file an affidavit under C.R.C.P. 56(f), explaining the reasons why it cannot do so. A court may refuse the application for judgment or may grant a continuance and permit discovery. C.R.C.P. 56(f). A court retains discretion in making such a determination. Holland v. Board of County Commissioners, 883 P.2d 500 (Colo.App.1994).
 

 Under C.R.C.P 56, a "material fact" is one that affects the outcome of the case. Whether a genuine issue exists as to any issue of material fact is itself a question of law. Sender v. Powell, 902 P.2d 947 (Colo.App.1995).
 

 It is not an abuse of discretion to deny a C.R.C.P. 56(f) request if the movant has failed to demonstrate that the proposed discovery was necessary and could produce facts that would preclude summary judgment. Sundheim v. Board of County Commissioners, 904 P.2d 1887 (Colo.App.1995), aff'd, 926 P.2d 545 (Colo.1996).
 

 Here, in the C.R.C.P. 56(f) affidavit, 'counsel for defendants asserted that he had reason to believe that defendants had been the victims of theft, that he needed to depose the dealer and certain employees of Key bank, and that he needed to propound written discovery to Keybank concerning the theft issues. Further, counsel indicated that he wished to explore whether Keybank was precluded from obtaining relief under the equitable doctrine of unclean hands.
 

 As noted above, it was undisputed that defendants entrusted their vehicles and the dealer was empowered to sell them. Further, "theft" within the meaning of § 18-4-405 did not occur. It necessarily follows that the information upon which defendants sought discovery could not have produced facts that would have precluded summary
 
 *216
 
 judgment. Accordingly, the trial court did not abuse its discretion in refusing to grant defendants' request for discovery.
 

 Furthermore, even if we assume, without deciding, that the requested discovery would have disclosed that Keybank had unclean hands, that issue was not relevant to a determination of the ultimate issue of who owned the vehicles.
 

 For the same reasons, we reject defendants' contention that the trial court's action deprived them of their due process rights to litigate the issues presented.
 

 C.
 

 Defendants also contend that the trial court erred in granting summary judgment because, even without the requested discovery, the record discloses that there was a genuine issue of material fact. We disagree.
 

 Defendants point to an affidavit of a detective who investigated the dealer's fraudulent scheme. The affidavit was executed for the purpose of obtaining an arrest warrant for the dealer and set forth the factual basis for criminal charges of theft arising out of the various transactions.
 

 Whatever the affidavit may suggest concerning the dealer's intent and whether he would be liable for violation of the criminal law, it says nothing concerning whether the provisions of § 18-4-405 are applicable here. In view of our determination that, based on the undisputed facts, there was larceny by trick or fraud but not theft within the meaning of § 18-4-405, the affidavit does not create a genuine issue of material fact.
 

 Furthermore, the supplemental affidavit of counsel attaching the criminal information, findings and acceptance of guilty plea, and judgment of conviction and sentence concerning the used-car dealer likewise is not material to the determination of the issue in this case. Even though the dealer may have been convicted of theft, it was not the variety of "theft" contemplated by § 18-4-405 and thus was insufficient to override the operation of § 4-2-4038. Therefore, it was not material.
 

 IIL.
 

 Defendants assert the trial court improperly engaged in fact finding on the issue of relative responsibilities of the parties. We conclude that any error was harmless.
 

 The trial court stated in its judgment that:
 

 [IJn a situation such as this where all of the parties are innocent in the facts creating the problem, the Court should try to find as just a result as possible. It seems to me that since the [defendants] were the ones who involved the wrongdoer through the consignments, they bear a greater responsibility.
 

 As discussed above, the undisputed facts establish that the defendants authorized the dealer to sell their vehicles and transfer title to the new purchasers and, under § 4-2-4038, the purchasers became the rightful owners of the vehicles. Thus, the issue of the relative responsibilities of the parties was not germane to the ultimate conclusion regarding ownership of the vehicles. Consequently, any error was harmless.
 

 IV.
 

 To the extent that defendant Mas-carenas claims that the stipulated facts are silent as to his transaction with the dealer, we nevertheless reject his request for reversal of the judgment on that basis. In his answer to the complaint, Mascarenas admitted the undisputed facts presented in the stipulation. Accordingly, there is a record basis for the adverse determination as to him.
 

 The judgment and order are affirmed.
 

 Judge MARQUEZ and Judge TAUBMAN concur.