John STREKAL, Plaintiff–Appellant,

v.

Dwight E. ESPE and Dorothy B. Espe, Defendants–Appellees.

No. 02CA2168.

Colorado Court of Appeals, Division V.

Dec. 16, 2004.

Certiorari Denied June 27, 2005.*

---

* Chief Justice MULLARKEY and Justice KOURLIS would grant as to the following issues:

Whether the court of appeals erred in holding that Pacific Rim Financial, a mortgagee, constituted a bona fide purchaser without notice for purposes of the shelter rule.

Whether the court of appeals erred in holding that the stolen property statute, section 18-4-405, does not authorize recovery against a good faith purchaser who holds record title to real property earlier conveyed under fraudulent circumstances.

Cameron W. Tyler & Associates, P.C., Cameron W. Tyler, Boulder, Colorado, for Plaintiff–Appellant.

Karsh, Fulton, Gabler & Joseph, P.C., Seymour Joseph, Ivan M. Call, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge RUSSEL.

Plaintiff, John Strekal, appeals the trial court's order granting summary judgment in favor of defendants, Dwight E. and Dorothy B. Espe. We affirm, although on grounds different from those relied on by the trial court.

According to the complaint, Strekal and his wife bought a house from Lee Crow in 1994, taking title in joint tenancy. In January 1996, Strekal's wife died, leaving Strekal the sole owner. In November 1996, Crow convinced Strekal to convey the property to her, promising that she would correct defects in the title and then reconvey the property to Strekal.

Crow did not reconvey the property. Instead, she forcibly evicted Strekal and kept his personal belongings. Crow later conveyed the house to David Masters.

In March 1999, Strekal filed suit against Crow, seeking money damages for fraud. Strekal did not name Masters, who then owned the property, as a defendant. The court entered default judgment against Crow, awarding Strekal $84,000 as compensation for the loss of the house and an additional sum for the loss of his personal property.

In October 1999, Strekal filed the present action, seeking the return of the house. As defendants, Strekal named Crow, Masters, and two lenders: Pacific Rim Financial Ser-

vice, which had acquired a deed of trust from Masters, and Utah Mortgage Center, Inc., which later acquired the assets of Pacific Rim. Strekal also recorded a notice of lis pendens on the property.

In November 1999, Utah Mortgage acquired title by foreclosing on the Masters deed of trust.

In May 2000, Utah Mortgage sold the house to Dwight and Dorothy Espe. The court allowed Strekal to amend his complaint to name the Espes as defendants.

In November 2000, the court dismissed Strekal's action against the lenders for failure to state a claim and awarded attorney fees against Strekal and his lawyers. A division of this court affirmed the award of attorney fees against the lawyers. *Underhill & Underhill, P.C. v. Pacific Rim Fin. Serv.,* (Colo.App. No. 01CA2090, Jan. 30, 2003), 2003 WL 194922 (not published pursuant to C.A.R. 35(f)). Another division affirmed the judgment in favor of the lenders and the award of attorney fees against Strekal. *Strekal v. Pacific Rim Fin. Serv.*, (Colo.App. No. 01CA1847, May 1, 2003), 2003 WL 1995928 (not published pursuant to C.A.R. 35(f)) (*Strekal I* ).

After the dismissal of Strekal's claims against the lenders, this action proceeded against the Espes. Strekal claimed that he could recover the house under Colorado's stolen property statute, § 18–4–405, C.R.S. 2004. The Espes moved for summary judgment, arguing that Strekal's claim was barred by res judicata and the statute of limitations. In a separate motion, the Espes argued that Strekal could not recover the house because the stolen property statute does not apply when the underlying theft is accomplished by fraud or deception.

The trial court granted summary judgment on the basis of res judicata. It did not address the statute of limitations or the scope of the stolen property statute.

Strekal now appeals from the order granting summary judgment. We review de novo, using the same standards that govern the trial court's determination. We will uphold an order granting summary judgment only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

## I. Res Judicata

■ Strekal contends that res judicata does not bar the present action. We agree.

■ Res judicata is the doctrine of claim preclusion. *Byrd v. People,* 58 P.3d 50, 53 n. 3 (Colo.2002). The doctrine bars claims that were litigated, or could have been litigated, in an earlier action that resulted in a final judgment on the merits. *Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1973). Under this doctrine, a final judgment is considered conclusive in any subsequent litigation that involves (1) the same claim for relief, (2) the same subject matter, and (3) the same parties or those in privity with them. *Foley Custom Homes, Inc. v. Flater,* 888 P.2d 363, 364 (Colo.App.1994).

■ Strekal resists claim preclusion on the ground that the Espes were not parties to the first action. This argument requires us to consider the concept of privity, for claim preclusion is not limited to cases in which the parties are identical; it also may be invoked by and against those in privity with the parties. *See Pomeroy v. Waitkus, supra,* 183 Colo. at 350, 517 P.2d at 399 (doctrine "requires an identity of parties or their privies").

■ "Privity" means that a nonparty is related to a case in such a way that he or she should be regarded as a party. *Pub. Serv. Co. v. Osmose Wood Preserving, Inc.,* 813 P.2d 785, 788 (Colo.App.1991); *see Mars Inc. v. Nippon Conlux Kabushiki–Kaisha,* 58 F.3d 616, 619 (Fed.Cir.1995). Courts find privity when there is (1) a substantial identity of interests between the party and the nonparty and (2) a working or functional relationship in which the party presents and protects the nonparty's interests in litigation. *S.O.V. v., People in Interest of M.C.,* 914 P.2d 355, 360 (Colo.1996).

■ Courts often find privity between a party and its successor in interest to property affected by a lawsuit. As a rule, courts find privity in this relationship only if the lawsuit is filed before the property changes hands. If the property is transferred first, there is no privity because the party has no interest in the outcome of the lawsuit and has no reason to defend its successor's interests. *See* Restatement (Second) of Judgments § 44 cmt. f (1982) (successor is not bound if he acquired his interest before the action was commenced).

Divisions of this court have applied this rule in earlier cases. *See Bankers & Shippers Ins. Co. v. Curtis, Inc.,* 42 Colo.App. 399, 400–01, 598 P.2d 520, 521 (1979) (case remanded to determine whether nonparty acquired its interest by subrogation before commencement of the first lawsuit); *Webster v. Kautz,* 22 Colo.App. 111, 118, 123 P. 139, 142 (1912) (because the note was assigned before commencement of the first action, nonparty is "not concluded by the judgment in that action by reason of privity"). And this rule is consistently applied in other jurisdictions. *See Laster v. Am. Nat'l Fire Ins. Co.,* 775 F.Supp. 985, 989 (N.D.Tex.1991), *aff'd,* 966 F.2d 676 (5th Cir.1992); *Sun Valley Land & Minerals, Inc. v. Burt,* 123 Idaho 862, 853 P.2d 607, 614 (Idaho Ct.App.1993); *In re Estate of Beason,* 248 Kan. 803, 811 P.2d 848, 855 (1991); *Bismarck Pub. Sch. Dist. No. 1 v. Hirsch,* 136 N.W.2d 449, 451–53 (N.D.1965) (discussing rule); *Gerke v. Burton Enters., Inc.,* 97 Or.App. 629, 776 P.2d 879, 880 (1989).

More recently, a division of this court found privity where a nonparty acquired its interest *before* the first lawsuit was commenced. *See Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.,* 97 P.3d 215 (Colo. App.2003) (*cert. granted* Sept. 7, 2004). But *Argus* does not represent a departure from the settled rule regarding successors in interest. Rather, privity resulted there from a combination of circumstances: (1) the nonparty and the parties were related corporate entities; (2) the nonparty acquired its interest as an agent for one of the parties; (3) the parties purported to represent themselves and their "successors in interest"; and (4) the nonparty failed to show that its interests were not adequately represented.

Properly viewed, *Argus* simply evidences that privity exists when the nonparty's interests are actually represented in the first action. Other courts have reached similar conclusions where the party and the nonparty are related corporate entities. *See Mars Inc. v. Nippon Conlux, supra* (absent a legally distinct basis for recovery against corporate parent, final judgment against wholly owned subsidiary results in claim preclusion); *Futura Dev. Corp. v. Centex Corp.,* 761 F.2d 33 (1st Cir.1985) (under res judicata statute, prior contract action against corporate subsidiary protects corporate parent against claim for fraud).

After examining the record, we find no support for the trial court's conclusion that the Espes are in privity with Crow. The Espes are not in privity as Crow's successors because Crow sold the house before Strekal commenced his first lawsuit.

We therefore conclude that the trial court erred in granting summary judgment on the basis of res judicata. *See, e.g., Breaux v. Avondale Indus., Inc.,* 842 So.2d 1115, 1120–23 (La.Ct.App.2003) (worker's suit against suppliers of asbestos did not preclude claims against employers and other suppliers); *Carris v. John R. Thomas & Assocs., P.C.,* 896 P.2d 522, 527 (Okla.1995) (builder's contract action against client did not preclude a later action against the architect for negligence and fraud).

## II. Stolen Property and the Recording Act

Arguing in the alternative, the Espes contend that summary judgment was proper because one cannot bring an action to recover property under § 18–4–405 when the underlying theft was accomplished by fraud or deception.

Although the Espes raised this argument in the trial court, they did so only shortly before the court ruled on summary judgment. Consequently, Strekal did not respond to this argument in the trial court, and the court did not consider it. Nevertheless, we may address it here. *See Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct.

1153, 1156 n. 6, 25 L.Ed.2d 491 (1970) (prevailing party may assert any ground in support of the judgment, whether or not that ground was relied upon or even considered by the trial court); *In re Estate of Krotiuk*, 12 P.3d 302, 306 (Colo.App.2000).

Both parties briefed this issue on appeal. And, at our request, both sides filed supplemental briefs addressing these related questions:

> Assuming that § 18–4–405 generally authorizes actions to recover property obtained by fraud, (1) does § 18–4–405 negate the protections accorded to good faith buyers of real estate under Colorado's recording act; and (2) are the Espes protected as good faith buyers under the recording act?

We now affirm the summary judgment on this alternative ground. Assuming, without deciding, that § 18–4–405 permits recovery of property obtained by fraud or deception in some circumstances, it does not permit recovery of real property so obtained when record title is held by a good faith purchaser. And we conclude that the Espes are good faith purchasers protected by Colorado's recording act.

### A. Pertinent Statutes

#### 1. Rights in Stolen Property

Since 1861, Colorado has had a stolen property statute similar to § 18–4–405. Until 1967, that statute authorized recovery of property taken only by larceny, robbery, or burglary:

> All property obtained by larceny, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. Such owner may maintain his action not only against the felon, but against any person in whose possession he may find the same.

Colo. Sess. Laws 1967, ch. 312, § 40–5–12 at 575.

In 1967, the legislature introduced the crime of theft into the criminal code. The new crime merged larceny with other offenses, including false pretenses:

> Wherever any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence game, or shoplifting, said law shall be interpreted as if the word "theft" were substituted therefor
>
> . . . .

Colo. Sess. Laws 1967, ch. 312, § 40–5–2(4) at 574.

The purpose of this change was to remove technical distinctions that had frustrated the prosecution of property crimes. *See People v. Warner*, 801 P.2d 1187, 1189 (Colo.1990) (by merging the crimes of larceny, embezzlement, false pretenses, and confidence games, the general assembly sought to prevent offenders from evading punishment on the technicality of being charged under the wrong law).

At the same time, the legislature made conforming amendments to many related statutes. In the stolen property statute, the legislature changed the word "larceny" to "theft." Colo. Sess. Laws 1967, ch. 312, § 40–5–12 at 575. The current version of the statute reflects this change:

> All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof, but also against any person in whose possession he finds the property.

Section 18–4–405.

#### 2. Recording Act

"Colorado has had a recording act ever since the first territorial legislature met in 1861." *City of Lakewood v. Mavromatis*, 817 P.2d 90, 94 (Colo.1991). Although it has evolved over the years, the act has retained this essential feature: it will protect a good faith purchaser with a record interest in real property over someone who has an unrecorded interest in the same property. *City of Lakewood v. Mavromatis, supra.*

The current version of the act provides, in pertinent part:

All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated .... No such unrecorded instrument or document shall be valid against any person with any kind of rights in or to such real property who first records and those holding rights under such person, except between the parties thereto and against those having notice thereof prior to acquisition of such rights. This is a race-notice recording statute. In all cases where by law an instrument may be filed in the office of a county clerk and recorder, the filing thereof in such office shall be equivalent to the recording thereof, and the recording thereof in the office of such county clerk and recorder shall be equivalent to the filing thereof.

Section 38–35–109(1), C.R.S.2004.

This act protects purchasers by giving them notice of real estate ownership and providing an accessible history of title. *City of Lakewood v. Mavromatis, supra; Guaranty Bank & Trust Co. v. LaSalle Nat'l Bank Ass'n,* 111 P.3d 521 (Colo.App.2004) (purpose of the recording act is "to protect bona fide purchasers without notice, or anyone who in good faith and without notice of a prior unrecorded deed or other instrument acquires a lien or encumbrance on the same tract of land").

### B. Parties' Arguments

The parties recognize an apparent tension between the stolen property statute and the recording act.

Under the stolen property statute, Strekal appears to have the superior right: the statute expressly allows an owner to recover against good faith purchasers. And the 1967 amendment—allowing recovery for property obtained by "theft"—suggests that an owner may be able to recover even when the property was obtained by fraud or deception. Strekal contends that the 1967 amendment implicitly repealed protections accorded to

good faith purchasers of real property under the recording act, and he urges us to resolve this case by simple reliance on the plain language of § 18–4–405.

Under the recording act, the Espes appear to have the superior right: they have a recorded interest in the house, while Strekal does not. And Colorado courts have recognized that a prior recorded interest is superior to the rights of an owner who was the victim of fraudulent or deceptive conduct. *See Bray v. Trower,* 87 Colo. 240, 286 P. 275 (1930). The Espes contend that the stolen property statute did not abrogate any part of the recording act. They argue that the house—voluntarily conveyed by Strekal under fraudulent circumstances, and subsequently conveyed to a good faith purchaser—is not "property obtained by theft," within the meaning of § 18–4–405.

We agree with the Espes.

### C. Analysis

In *Keybank v. Mascarenas,* 17 P.3d 209 (Colo.App.2000), a division of this court confronted an apparent conflict between the stolen property statute and a provision of the Uniform Commercial Code (UCC), § 4–2–403, C.R.S.2004. In that case, owners entrusted their cars to a dealer so that he could sell them on consignment. The dealer sold the cars to good faith buyers, but he fraudulently kept the money instead of remitting it to the owners. When the county clerk and recorder learned of the fraudulent activity, she refused to transfer record title to the cars. This prompted a suit between a lender that wanted to record liens on the titles and the former owners, who wanted their cars back.

In resolving this dispute, the division first noted that the buyers were protected under § 4–2–403. That statute provides, in effect, that if an owner entrusts property to a merchant who customarily sells that kind of goods, the merchant has authority to transfer all of the owner's rights to a buyer in the ordinary course of business. *Keybank v. Mascarenas, supra,* 17 P.3d at 213.

The division next concluded that the stolen property statute does not defeat the protec-

tions of § 4–2–403. The division observed that § 4–2–403 maintains the traditional distinction between ordinary theft, in which the owner is unaware of a physical taking, and fraud or larceny by trick. Thus, within the meaning of § 4–2–403, entrustment cannot occur through ordinary theft, but it does occur if an owner voluntarily surrenders property under fraudulent circumstances. And if an entrustment occurs, the merchant can transfer good title to a buyer in the ordinary course of business. *Keybank v. Mascarenas, supra,* 17 P.3d at 214.

Accordingly, held the division, the stolen property statute was inapplicable:

> We therefore conclude that "theft" as used in § 18–4–405 does not encompass a larceny by trick or fraud, even if punishable under the criminal law, in which a person voluntarily delivers possession of his or her property under an agreement, giving the perpetrator authority to sell it under the UCC.

*Keybank v. Mascarenas, supra,* 17 P.3d at 214.

Strekal argues that *Keybank* is inapposite because the real property at issue in this case stands outside the scope of § 4–2–403. Although Strekal is right about the applicability of *Keybank*'s narrow holding, he is wrong about the value of its underlying observations. *Keybank* is instructive because it addresses an apparent conflict between the stolen property statute and a provision in the UCC, and resolves that conflict by recognizing an implicit limitation in the stolen property statute. We are persuaded that the apparent conflict between the stolen property statute and the recording act should be resolved in a similar manner.

We begin by stating the obvious: the security and marketability of real estate titles is an "essential state interest." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 544, 114 S.Ct. 1757, 1764, 128 L.Ed.2d 556 (1994). This interest is best served by a bright line rule that enables potential buyers to determine the validity of a title and its potential encumbrances. *Lobato v. Taylor,* 71 P.3d 938, 964 (Colo.2002) (citing Michael H. Rubin & E. Keith Carter, *Notice of Seizure in Mortgage Foreclosures and Tax Sale Proceedings: The*

*Ramifications of Mennonite,* 48 La. L.Rev. 535, 592 (1988)). The recording act is an essential part of a scheme "intended to ensure titles to real property are secure and marketable." *Lobato v. Taylor, supra,* 71 P.3d at 964.

■ Accordingly, we will give full effect to the recording act absent the clearest expression of contrary legislative intent. We will not presume that the legislature intended to eliminate longstanding and substantial features of real estate law merely by changing provisions located in the criminal code. *See Scholz v. Metro. Pathologists, P.C.,* 851 P.2d 901, 911 (Colo.1993) ("we will not assume that the General Assembly intended to abolish or otherwise abrogate a preexisting law without a clear expression of its intent to do so").

We see no indication that, when the legislature amended the stolen property statute in 1967, it intended to abrogate the provisions and principles that have served to ensure the basic marketability of real estate titles. Thus, in our view, Colorado law still recognizes the distinction between title obtained by force or forgery, which will not trigger protections of the recording act, and title obtained by trick or fraud, which will:

> Generally, a bona fide purchaser will acquire title over a prior owner. *See* § 38–35–109, C.R.S.2003 (race-notice recording statute); *Delta County Land & Cattle Co. v. Talcott,* 17 Colo.App. 316, 321, 68 P. 985, 987 (1902) ("[I]f, upon their face, the records are complete, and show that the title is good, in the absence of information to the contrary from any other source, [the purchaser] may safely rely upon them."); *see also Upson v. Goodland State Bank & Trust Co.,* 823 P.2d 704 (Colo.1992).

> However, when the initial deed is void, as in the case of a forged deed, title cannot pass to the subsequent purchaser, and, as a result, the defrauded owner prevails. *See Upson v. Goodland State Bank & Trust Co., supra.*

*Martinez v. Affordable Housing Network, Inc.,* 109 P.3d 983 (Colo.App.2004).

We therefore conclude that the stolen property statute does not authorize recovery

against a good faith purchaser who holds record title to real property earlier conveyed under fraudulent circumstances.

### D. Application Here

■ We now address whether the Espes are good faith purchasers protected by the recording act.

■ To be a good faith purchaser of real property, one must give value for the property, act in good faith, and lack notice of any defect in the title to the property. Whether a party is a good faith purchaser is a question of fact. *Martinez v. Affordable Housing Network, Inc., supra.*

Here, the parties do not dispute the pertinent facts. Rather, they dispute the legal significance of one uncontested fact: the Espes acquired their interest after Strekal filed the notice of lis pendens. Under these circumstances, we may conduct the applicable legal inquiry to determine whether the Espes are good faith purchasers. *See City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo.1993) (when the facts are undisputed, the reviewing court will "determine the applicable legal standard and then apply that standard").

Strekal contends that the notice of lis pendens bars the Espes from gaining the status of good faith purchasers. The Espes contend that the notice of lis pendens does not matter because they gained the status of good faith purchasers under the "shelter rule." We agree with the Espes.

■ "The 'Shelter Rule' provides that one who is not a bona fide purchaser, but who takes an interest in property from a bona fide purchaser, may be sheltered in the latter's protective status." *Sun Valley Land & Minerals, Inc. v. Burt, supra*, 853 P.2d at 613. The rule is a venerable principle of Colorado property law. *See Moore v. Allen*, 26 Colo. 197, 200–01, 57 P. 698, 699 (1899) (if buyer acquired title from an innocent purchaser, her title would be unaffected by notice of claims); *see also Reed v. Munn*, 148 F. 737, 753 (8th Cir.1906) (Colorado) ("it is well-settled that a purchaser with notice may protect his title by purchasing that of a bona fide purchaser without notice"). The rule

exists to protect the marketability of title. *See Reed v. Munn, supra*, 148 F. at 753 (rule exists to "prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell").

■ There are two exceptions to the shelter rule. First, when a good faith purchaser obtains the property from a grantor who had notice of an outstanding interest in the property, the shelter rule does not apply if the property is reconveyed to the grantor. Second, the shelter rule does not apply if the property is reconveyed from a good faith purchaser to a person who is guilty of violating a trust or duty with respect to the property. *Sun Valley Land & Minerals, Inc. v. Burt, supra.* Neither of these exceptions applies here.

Therefore, the Espes will prevail if they acquired their interest from a good faith purchaser who took without notice of a potential defect in the title. And it is clear that the Espes acquired their rights under a chain of title that included a good faith purchaser without notice:

1. After acquiring the property from Strekal, Lee Crow conveyed the property to David Masters by deed. At the same time, Masters gave his lender, Pacific Rim Financial Service, a deed of trust on the property. Strekal has never suggested that Pacific Rim had notice of any potential defect in title before it acquired or recorded its deed of trust. (Although Strekal named Pacific Rim as a defendant in this action, his claims were dismissed for failure to state a claim. *See Strekal I, supra.*) Therefore, Pacific Rim was a good faith purchaser who took without notice. *See* § 38–35–109(1) (protecting against unrecorded interest "any person with any kind of rights . . . who first records"); *see also Sun Valley Land & Minerals, Inc. v. Burt, supra*, 853 P.2d at 611 (mortgagee may be a good faith purchaser); *Akins v. Vermast*, 150 Or.App. 236, 945 P.2d 640, 643 (1997) (bona fide purchaser rule applies to lenders as well as purchas-

ers); 1 J. Palomar, *Patton and Palomar on Land Titles* § 10 (3d ed.2003) (within the meaning of recording acts, the term "purchaser" includes a mortgagee).

2. Pacific Rim was subsequently dissolved, and its assets, including the deed of trust from Masters, were acquired by Utah Mortgage Center, Inc. Because Pacific Rim was a good faith purchaser without notice, Utah Mortgage acquired the status of a good faith purchaser without notice under the shelter rule. *See Moore v. Allen, supra;* Palomar, *supra,* § 10 ("purchaser" includes assignee of a mortgage interest).

3. Thus, when the Espes bought the property from Utah Mortgage, following foreclosure of the Masters deed of trust, they acquired the status of good faith purchasers without notice under the shelter rule, even though they took with notice of the lis pendens. *See Moore v. Allen, supra; Reiner v. Danial,* 211 Cal.App.3d 682, 690, 259 Cal. Rptr. 570, 574 (1989) (if earlier grantor was a good faith purchaser with notice, successors' knowledge is irrelevant because they receive the same protection that grantor acquired); *Sun Valley Land & Minerals, Inc. v. Burt, supra,* 853 P.2d at 613 (buyer is entitled to take the property, even if it knew of adverse claims, "because it is cloaked in [bank's] status as a bona fide purchaser").

For this reason, we conclude that Strekal cannot recover under § 18–4–405 against the Espes' recorded interest.

The judgment is affirmed.

Judge VOGT and Judge DAILEY concur.