Sullivan
No. 85-402

DARTMOUTH MOTOR SALES, INC.

v.

ALAN WILCOX d/b/a T & T AUTO SALES & a.

October 2, 1986

*Law Offices of Wm. Howard Dunn*, of Claremont (*Wm. Howard Dunn* on the brief and orally), for the plaintiff.

*Leahy, Denault & Moody*, of Claremont (*James G. Feleen* on the brief and orally), for the defendant Bruce Campbell, d/b/a Soupy's Used Cars.

BROCK, J. The plaintiff, Dartmouth Motor Sales, Inc. (Dartmouth) brought an action for declaratory judgment, replevin, and injunction or rescission against Alan Wilcox, d/b/a T & T Auto Sales (Wilcox); Bruce Campbell, d/b/a Soupy's Used Cars (Campbell); Cheryl Willis (Willis); and the New Hampshire Division of Motor Vehicles. The complex set of facts relevant to the disposition of this case involves the ownership of a 1983 Chevrolet Camaro.

On January 9, 1985, Dartmouth sold the Camaro to Wilcox, who represented himself to be a dealer doing business as T & T Auto Sales. Wilcox, however, was in fact not a dealer under RSA chapter 261. Wilcox purchased the vehicle with a personal check for $6,300, and the vehicle's title was purportedly transferred by assignment. The check was later dishonored. On January 10, Campbell, a licensed dealer doing business as Soupy's Used Cars, bought the car from Wilcox for $4,300 and title to the vehicle was again transferred by assignment.

On January 15, at approximately 2:00 p.m., Dartmouth's bookkeeper telephoned Campbell and told him that Dartmouth had a potential claim against the vehicle. At about 4:00 p.m. on the same day, the bookkeeper spoke again to Campbell. According to the Master's (*R. Peter Shapiro*, Esq.) later finding, the "substance of that conversation was that the matter was cleared up, the police had no jurisdiction, and [the bookkeeper] knew Campbell was going to sell the car and he would have to do what he would have to do." The master further found that Campbell "reasonably believed that there were no liens or adverse claims against the motor vehicle." Willis obtained a car loan and, at approximately 5:00 p.m. on that day, Campbell sold the car for $5,500 to Willis, who took possession of the Camaro, the title documents having been prepared by Mrs. Campbell. The title application was sent to the New Hampshire Title Bureau. However, it was rejected because the mileage on the sale to Dartmouth was not noted on the title certificate and also because an application for title and the required fee had to be submitted on behalf of Wilcox, as Wilcox was not a dealer.

Dartmouth filed this suit in March, and, after a hearing, the master found that Wilcox was in default and liable to Dartmouth in damages, but that Campbell had acted in good faith at all times and was not so liable. He further found the same to be true with regard to Willis. The master, having found that Willis was a *bona fide* purchaser for value, nevertheless ruled that RSA chapter 261 superseded the relevant provisions of the Uniform Commercial Code, *see* RSA 382–A:2–403, and that therefore Dartmouth had the right of possession of and title to the Camaro because Dartmouth's title had never been transferred in accordance with RSA chapter 261. He further stated that Willis could proceed against Campbell's dealer's bond. *See* RSA 261:98.

Campbell filed a timely motion for reconsideration, which was denied. Both the master's report and his denial of the motion for reconsideration were approved by the Superior Court (*DiClerico,* J.).

After filing an unsuccessful motion for a new trial, Campbell filed an appeal with this court, contending that the master erred in his finding that Wilcox had committed theft under RSA 637:4, and in ruling that RSA chapter 261 superseded the relevant provisions of the Uniform Commercial Code. He further argues that, because of its own conduct, Dartmouth should be estopped from asserting any title defects in its suit. Finally, Campbell maintains that the possibility of a claim against his dealer's bond, the success of which would effectively require him to pay damages because the bonding company would exercise its right of subrogation, conflicts with the master's holding that Campbell should not be liable in damages.

Dartmouth cross-appealed, arguing that the master erred in finding that Campbell had acted in good faith. Dartmouth also requested that this court vacate the master's ruling as to damages. We affirm in part, reverse in part, and remand.

We note at the outset that the issues before us arise out of the relationship between certain provisions of RSA chapter 261, which governs certificates of title and the registration of motor vehicles, and the Uniform Commercial Code, RSA chapter 382–A.

Two provisions of RSA chapter 261 are relevant to this case. The first provision, RSA 261:14, covers transfers by non-dealers. It provides that an owner must execute an assignment and warranty of title to the person to whom the vehicle is to be transferred and have the certificate and assignment delivered to the transferee or the department of safety. The statute also provides that "[e]xcept as provided in RSA 261:15 and as between the parties, a transfer by an owner is not effective until the provisions of this section and RSA 261:19 [relating to fees] have been complied with. . . ." The second

provision, RSA 261:15, governs resale by dealers. Under certain specified circumstances, a dealer need not send the certificate of the prior owner to the department of safety, but instead upon transfer can "execute the assignment and warranty of title by a dealer, . . . in the spaces provided therefor on the certificate . . . and . . . deliver the certificate to the department with the transferee's application for a new certificate."

Article 2–403 of the New Hampshire Uniform Commercial Code, RSA 382–A:2–403 (Power to Transfer; Good Faith Purchase of Goods; "Entrusting"), provides in part:

> "(1) A purchaser of goods acquires all title which his transferor had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> (a) the transferor was deceived as to the identity of the purchaser, or
>
> (b) the delivery was in exchange for a check which is later dishonored, or
>
> (c) it was agreed that the transaction was to be a 'cash sale', or
>
> (d) the delivery was procured through fraud punishable as larcenous under the criminal law."

We first deal with Dartmouth's argument that the master erred in finding that Campbell acted in good faith when he resold the Camaro to Willis. "We will affirm a master's findings and rulings 'unless they are unsupported by the evidence or are erroneous as a matter of law.'" *Terzis v. Estate of Whalen*, 126 N.H. 88, 91, 489 A.2d 608, 611 (1985) (quoting *Stanley D. v. Deborah D.*, 124 N.H. 138, 143, 467 A.2d 249, 251 (1983)). There was evidence at the hearing from which the master could determine that Campbell had acted in good faith at all times. What appears to have been dispositive in the master's view was the second discussion which Campbell had with Dartmouth's bookkeeper. In that discussion, the master found, Campbell was told in essence that he could sell the vehicle. This led to the master's determination that Campbell "reasonably believed that there were no liens or adverse claims against the motor vehicle." After a careful review of the record, we hold that the master's findings and rulings with regard to Campbell's good faith

both before and after his purchase of the Camaro were a reasonable interpretation of the information placed before him at the hearing and not erroneous as a matter of law.

■ Next, we consider the transfer from Dartmouth to Wilcox. Wilcox obtained voidable title under a transaction of purchase from Dartmouth and therefore had the power to transfer good title to Campbell under RSA 382–A:2–403(1), even though the purchase from Dartmouth was fraudulent. The fact that Wilcox obtained the vehicle by fraudulent means does not render the transfer to Campbell void, because the statute contemplates that a voluntary transfer, even if procured by larcenous conduct, gives the transferee voidable title and the power to transfer good title under RSA 382–A:2–403(1)(d). Campbell, a good faith purchaser for value under the Code, could thus transfer good title to Willis.

The dispositive issue here, however, is whether non-compliance with the described provisions of the motor vehicle title statute would render void the transfers from Dartmouth to Wilcox, and from Wilcox to Campbell and therefore would render the later transfer between Campbell and Willis also void. We hold that it would not.

■ ■ . The intent of the title statute is "to facilitate the identification of motor vehicles, the ascertainment of their owners and the prevention of theft or fraud in their transfer." *In re Circus Time, Inc.*, 641 F.2d 39, 44 (1st Cir. 1981). The purpose of RSA 382–A:2–403(1) is to encourage the free flow of goods in commerce and to lessen the impact of common-law concepts of title on sales of goods. *See* Kunz, *Motor Vehicle Ownership Disputes Involving Certificate-of-Title Acts and Article Two of the U.C.C.*, 39 BUS. LAW. 1599, 1601, 1605 (1984). It is evident, then, that neither statute's purpose would be served by penalizing Campbell and Willis, whom the master found to be good faith purchasers for value. *See Island v. Warkenthien*, 287 N.W.2d 487, 489 (S.D. 1980); *see also Atwood Chev.-Olds v. Aberdeen Mun. Sch. Dist.*, 431 So. 2d 926, 928 (Miss. 1983).

■ In addition, Dartmouth inadvertently set in motion an ultimately unfortunate chain of events by accepting a $6,300 personal check from Alan Wilcox without further inquiry. This failure to inquire constituted, in our view, extremely poor business practice and led to the later events. Campbell received a title certificate which was facially valid in that the title appeared to have been transferred by the correct dealer-to-dealer procedure. *See* RSA 261:15. While Campbell presumably could have investigated Wilcox, Dartmouth also could have ascertained that T & T Auto Sales was not a dealer under RSA chapter 261. In fact, Dartmouth had the

first opportunity to do so and, had it looked into Wilcox's *bona fides*, would have discovered the fraud almost immediately. Thus, this chain of events could have been prevented from occurring. As we have stated before in another context, "where one of two innocent parties must suffer as the result of the wrongful act of a third, the loss must fall upon the one who made it possible for the third person to commit the wrong." *Kelley v. Peerless Ins. Co.*, 121 N.H. 253, 255, 428 A.2d 491, 493 (1981); *see also American Lease Plans v. R. C. Jacobs Plumbing*, 274 S.C. 28, 33, 260 S.E.2d 712, 714 (1979).

■ Thus, we hold that, in the following limited respect, RSA 382–A:2–403(1) takes precedence over the title statute. *See Atwood Chev.-Olds v. Aberdeen Mun. Sch. Dist., supra* at 928. Where a facially valid title to a vehicle is conferred on a party who has no notice of adverse claims against the vehicle, the Code provision will take precedence over the title statute even if the title statute has not been complied with. Thus, a facially valid title certificate procured by a good faith purchaser will pass good title. In effect, "[b]y construing the statutes in this manner, both the title statutes and the Commercial Code provisions can be given effect without diminishing the effect of the other." *Island v. Warkenthien, supra* at 489.

■ Thus, since the provisions of RSA 382–A:2–403(1) govern in this limited instance, their application results in the following narrative analysis: Dartmouth sold the vehicle to Wilcox, thinking he was a licensed dealer; in fact, he was not, but this happenstance and his fraudulent purchase by use of a bad check merely resulted in the latter's receiving voidable title to the vehicle. *See* RSA 382–A:2–403(1)(b), (d). Wilcox transferred the vehicle and a facially valid certificate of title to Campbell, a good faith purchaser for value. Campbell later conveyed good title to Willis, also a good faith purchaser for value. Dartmouth, therefore, is not entitled to the vehicle. Rather, it should remain in the hands of Willis, who thus has no cause to proceed against Campbell's dealer's bond.

We further hold that the issue which Dartmouth has raised regarding the master's findings as to damages is now moot insofar as Willis and Campbell are concerned. However, we remand for a determination of the amount of damages for which Wilcox is liable pursuant to the court's order. We therefore affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion. In view of our disposition of the case, we need not explicitly address the parties' other arguments.

*Affirmed in part; reversed in part; remanded.*

All concurred.