Allen L. SLATER, Petitioner–Appellant,

v.

Mark McKINNA, Respondent–Appellee.

No. 99SA224.

Supreme Court of Colorado,
En Banc.

April 10, 2000.

Rehearing Denied May 1, 2000.

Alan L. Slater, Pro Se, Olney Springs, Colorado.

David R. Brougham, Hall & Evans, L.L.C., Denver, Colorado, Attorney for Respondent–Appellee.

Ken Salazar, Attorney General, Paul S. Sanzo, First Assistant Attorney General, Litigation Section, Denver, Colorado, Attorneys for Amicus Curiae State of Colorado.

PER CURIAM.

The appellant, Allen L. Slater, filed a petition for a writ of habeas corpus in the Crowley County District Court on June 15, 1999. In the petition, Slater asserted that he was a prisoner of the State of Washington, but that on or about March 4, 1999, he was delivered to the custody of the appellee, Mark McKinna, the warden of the Crowley County Correctional Facility, a privately owned and operated prison facility in Olney Springs, Colorado.

On June 29, 1999, the district court dismissed Slater's petition on the ground that the court was without jurisdiction to consider the merits of Slater's petition because Washington State retained jurisdiction over Slater when it transferred him to Colorado. Slater

appealed the dismissal to this court. We have appellate jurisdiction pursuant to section 13–4–102(1)(e), 5 C.R.S. (1999). We affirm the district court's judgment dismissing Slater's petition, but on different grounds.

## I.

We derive the following facts from Slater's pleadings, attachments, and briefs. On September 6, 1996, a jury in Washington State found Slater guilty of two counts of burglary in the first degree and one count of burglary in the second degree. On November 14, 1996, the Superior Court of Kittitas County, Washington, sentenced Slater to 150 months' confinement in the Washington Department of Corrections.

However, in March 1999 Slater was delivered to the custody of the appellee, Mark McKinna, the warden of the Crowley County Correctional Facility (CCCF), a private prison facility in Olney Springs, Colorado. In his petition for habeas corpus and accompanying documents, Slater alleged that McKinna had no authority to hold him within CCCF. According to Slater, although his original Washington sentences were lawful, once he was transferred to the appellee's custody in Colorado, Slater's "order of commitment was violated due to the sentencing court in Washington not having jurisdiction within the State of Colorado."

The district court dismissed Slater's petition for writ of habeas corpus on the grounds that: Washington retained jurisdiction over Slater when it transferred him to Colorado; Colorado was only an agent acting on behalf of the State of Washington; and the court was therefore without jurisdiction to consider the merits of Slater's petition. *See Slater v. McKinna,* No. 99CV67 (Crowley County Dist. Ct. June 29, 1999) (order granting motion to amend petition and dismissing amended petition).[1] On appeal, Slater raises three main issues: (1) whether the district court erred when it concluded that it did not have jurisdiction over Slater and that Washington retained jurisdiction over him; (2) whether

the court erred in not granting the writ of habeas corpus after Slater produced evidence supporting a prima facie showing that his detention was illegal; and (3) whether the court erred when it refused to entertain the petition for habeas corpus in light of the evidence Slater offered in the form of a contract, exhibits, and other affidavits. We conclude that the district court correctly denied Slater's petition.

## II.

In *Brant v. Fielder,* 883 P.2d 17 (Colo. 1994), James Robert Brant alleged that he was a prisoner of the State of Wisconsin, and that he had been transferred and confined in Colorado in the Limon Correctional Facility under the Interstate Corrections Compact, *see* §§ 24–60–1601 to –1603, 7 C.R.S. (1999). *See Brant,* 883 P.2d at 18. Among his other complaints, Brant asked the district court to order the respondents to transport him back to Wisconsin. We affirmed the district court's judgment denying Brant's petition:

> The appellant is still subject to the jurisdiction of the Wisconsin authorities, § 24–60–1602 art. IV(c), (f), & art. V(a), and a legal avenue therefore exists for him to be returned to the sending state. *Boatwright v. Director,* 109 Nev. 318, 849 P.2d 274, 276 (1993) (Nevada prisoner who had been transferred to and confined in Arizona under the Western Interstate Corrections Compact could prosecute postconviction petition for writ of habeas corpus in Nevada courts). The existence of this legal remedy precludes the granting of habeas corpus relief by Colorado courts. *Jacobs v. Carmel,* 869 P.2d 211, 213 (Colo.1994).

*Id.* at 21. If Slater had been transferred to the custody of the Colorado DOC, *Brant* would control the result in this case.

However, Slater was transferred to a private correctional facility in Colorado, not to the DOC. Therefore, after the case was submitted to us, we asked the Colorado Attorney General, as amicus curiae, to brief the following questions:

---

1. Slater's original habeas corpus petition was dismissed because it did not contain his warrant of commitment, as required by section 13–45–101(1), 5 C.R.S. (1999). Slater filed an amended

petition that contained his Washington judgment and sentence. The court granted Slater's motion to amend. When we refer to Slater's petition, we mean his petition and amended petition.

1. Whether section 17–1–104.5, 6 C.R.S. (1999), applies in the case of a habeas corpus petition filed by a prisoner of the State of Washington who contests his confinement in a private correctional facility in Colorado.

2. If section 17–1–104.5 applies, whether the Colorado Supreme Court may take notice of compliance, or non-compliance with the statute, consistent with the due process rights of the petitioner, or whether this case must be remanded to the district court for further findings.

3. Whether, consistent with the due process rights of the petitioner, the Colorado Supreme Court may take notice of the existence and validity, or invalidity, of a contract between the State of Washington and CCCF relating to the incarceration of the petitioner at CCCF, or whether the case must be remanded to the district court for further findings thereon.

4. Whether the Interstate Corrections Compact, *see* §§ 24–60–1601 to –1603, 7 C.R.S. (1999), or the Western Interstate Corrections Compact, *see* §§ 24–60–801 to –805, 7 C.R.S. (1999), apply to the petitioner's incarceration at the CCCF.

5. If either compact applies, what effect does this have on the present case?

After reviewing the attorney general's amicus brief and the reply of the petitioner, we conclude that section 17–1–104.5 applies to Slater's confinement in Colorado, but that the ICC and the WICC do not.

## III.

Section 17–1–104.5, 7 C.R.S. (1999) provides:

> **17–1–104.5. Incarceration of inmates from other states—private contract prison facilities.**
>
> (1) The general assembly finds and declares that the importation of prisoners from other states into correctional facilities not operated by the department of corrections is a matter of statewide concern.
>
> (2) No inmate from a state other than Colorado may be received into the state of Colorado and be housed in a private contract prison facility or a prison facility

operated by a political subdivision of the state:

> (a) Without the express approval of the executive director, which approval shall not be unreasonably withheld; and
>
> (b) Unless the private contract prison facility or a prison facility operated by a political subdivision is designed to meet or exceed the appropriate security level for the inmate.

On its face, this section applies directly to this case because Slater is an out-of-state prisoner transferred to a private prison facility in Colorado. The more difficult question is whether the ICC or the WICC also apply.

The ICC provides that "[e]ach party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in *institutions* situated within receiving states." § 24–60–1602 art. III(a) (emphasis added). " 'Institution' means any penal or correctional facility, including but not limited to a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined." § 24–60–1602 art. II(e). " 'Inmate' means a male or female offender who is committed, under sentenced to or confined in a penal or correctional institution." § 24–60–1602 art. II(d). The corresponding sections of the WICC are essentially identical. *See* § 24–60–801 art. III(a), art. II(d), (e).

This definition of "institution" does not itself exclude a private facility. However, three factors persuade us that neither the ICC nor the WICC applies to private correctional facilities.

First, neither the ICC nor the WICC preempts other state law on the subject of the interstate transfer of prisoners. *See* § 24–60–1602, art. IX ("Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a non-party state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements."); § 24–60–801, art. IX (same); *see also Arnold v. Colorado Dep't of Correc-*

*tions,* 978 P.2d 149, 152 (Colo.App.1999) (rejecting contention that the ICC, pursuant to the Supremacy Clause, preempts any state law or contract regulating the interstate transfer of inmates).

Second, the ICC and WICC never refer to the responsibilities that a *private* entity may have regarding transferred inmates. The responsibility for sending regular reports on the transferred inmates, including conduct records of the inmates, falls on the receiving state, not private entities. *See* §§ 24–60–1602 art. IV(d), –801 art. IV(d). If the Compacts included private entities within their reach, it would be illogical and inefficient for the receiving state public authorities to have to supply the reports.

Finally, section 17–1–104.5 specifically deals with inmates transferred from another state to a private correctional facility located in this state. It does not require that the sending state be a party to either the ICC or the WICC. It does not impose the same responsibilities on the DOC as the ICC and the WICC would impose on the DOC to prisoners transferred to "institutions" in this state. Thus, section 17–1–104.5 is more specific than either the ICC or the WICC regarding prisoners, like Slater, who are transferred to private facilities in this state. Insofar as the provisions of the ICC and the WICC appear inconsistent with section 17–1–104.5, the latter provision, being the more specific, prevails. *See* § 2–4–205, 1 C.R.S. (1999).

■ In addition, section 17–1–104.5 was originally added in 1988, and made effective on July 1, 1988. *See* ch. 124, sec. 13, § 17–1–104.5, 1988 Colo. Sess. Laws 707, 711. It was amended in 1996, *see* ch. 229, sec. 3, § 17–1–104.5, 1996 Colo. Sess. Laws 1145, 1147; and amended again in 1998 to its present form, *see* ch. 294, sec. 2, § 17–1–104.5, 1998 Colo. Sess. Laws 1236, 1237. On the other hand, the ICC was first enacted in 1971, *see* ch. 209, sec. 1, § 74–18–1 to –3, 1971 Colo. Sess. Laws 856; the WICC in 1951, *see* ch. 277, sec. 1, § 74–9–1, 1951 Colo. Sess. Laws 768. If two or more statutes passed at different legislative sessions are irreconcilable, the statute with the latest effective date prevails. *See* § 2–4–206, 1 C.R.S. (1999). We need not construe section 17–1–104.5 as inconsistent with either of the Compacts, however, if we conclude, as we do, that they address different subject matters. We hold, therefore, that section 17–1–104.5 applies to inmate transfers to private facilities in this state; the ICC and WICC apply to inmate transfers to state facilities.

## IV.

■ We must now determine whether section 17–1–104.5 was complied with in this case. In his amicus brief, the attorney general has provided us with a copy of a contract between the Washington Department of Corrections, the Colorado Department of Corrections, and Crowley Correctional Services, L.L.C.; executed on February 26, 1999, and authorizing the transfer of Washington inmates to CCCF in Colorado.

In his reply to the attorney general's brief, the petitioner does not dispute that section 17–1–104.5 applies in this case, or that the statute has been complied with. Similarly, he does not assert that the copy of the contract provided to us is not authentic or is invalid because of improper execution. Other than the bare assertion that the contract is invalid, Slater did not provide the district court, or this court, any reason that it would be invalid. He does not raise any factual issues regarding the contract that should be addressed by the district court. In fact, Slater refers us to portions of the agreement itself to demonstrate this state's involvement in the agreement. Because the district court would have been justified in recognizing the existence of the contract had it been presented to it as it has been presented to us, without objection by any party, we see no reason not to do the same.

After reviewing the agreement, we find that it complies with section 17–1–104.5, and is not otherwise inconsistent with Colorado law. As required by section 17–1–104.5(2)(a), the contract is approved by John Suthers, the Executive Director of the Colorado Department of Corrections. In addition, Slater has not alleged that CCCF "is [not] designed to meet or exceed the appropriate security level for the inmate." § 17–1–104.5(2)(b).

The statutory grounds for granting a writ of habeas corpus are as follows:

(2) If it appears that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for some of the following causes:

(a) Where the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum, or person;

(b) Where, though the original imprisonment was lawful, yet by some act, omission, or event which has subsequently taken place, the party has become entitled to his discharge;

(c) Where the process is defective in some substantial form required by law;

(d) Where the process, though in proper form, has been issued in a case or under circumstances where the law does not allow process or orders for imprisonment or arrest to issue;

(e) Where, although in proper form, the process has been issued or executed by a person either unauthorized to issue or execute the same or where the person having the custody of the prisoner under such process is not the person empowered by law to detain him;

(f) Where the process appears to have been obtained by false pretense or bribery;

(g) Where there is no general law, nor any judgment, order, or decree of a court to authorize the process, if in a civil suit, nor any conviction if in a criminal proceeding.

§ 13–45–103(2), 5 C.R.S. (1999). Slater argues that section 13–45–103(2)(b) applies in his case because his transfer to Colorado was a subsequent event entitling him to discharge. However, we conclude that Slater's transfer to the CCCF was not in violation of any Colorado law. Moreover, the interstate transfer of an inmate does not deprive the inmate of any liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *See Olim v. Wakinekona*, 461 U.S. 238, 248, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

Finally, in his answer brief, the appellee notes that Wash. Rev.Code § 72.09.050 (Supp.1999), provides, in part: "Beginning February 1, 1999, the secretary [of corrections] may expend funds appropriated for the 1997/1999 biennium to enter into agreements with any local government *or private organization in any other state*, providing for the operation of any correctional facility or program for persons convicted of felonies." (Emphasis added.)

The petitioner has not established any reason why his transfer to Colorado constituted "some act, omission, or event which has subsequently taken place," § 13–45–103(2)(b), that entitles him to discharge of his Washington conviction and sentence. Thus, while we agree with Slater that the district court had subject-matter jurisdiction to consider the petition for writ of habeas corpus in this case, we conclude that he is not entitled to such relief.

## V.

The judgment of the district court dismissing the appellant's petition for writ of habeas corpus is affirmed. The denial of habeas corpus relief is without prejudice to any avenue of relief the appellant may pursue in Washington, the sending state.