Kenneth James WEST, Petitioner

v.

Tammy ROBERTS, a/k/a Tammie
Roberts, Respondent.

No. 05SC358.

Supreme Court of Colorado,
En Banc.

Oct. 10, 2006.

Law Offices of Joaquin G. Padilla, PLLC, Joaquin G. Padilla, Lucia Padilla Gallery, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

We review on certiorari an appellate decision from the district court, which construed Colorado Revised Statute section 18–4–405. We hold that this statute, which permits the rightful owner of stolen property to recover that property from the possession of another person, does not apply when the rightful owner intends to part with the property.

Kenneth James West relinquished his car in exchange for a cashier's check that appeared valid, but which thereafter proved to be a worthless counterfeit. When he later located the car in the possession of a subsequent purchaser, Tammy Roberts, West sued to recover the car under section 18–4–405. However, the trial court found that section 18–4–405 does not apply to situations, like this case, in which an owner voluntarily relinquishes the property, even if he is defrauded into doing so. Instead, the trial court applied Uniform Commercial Code (UCC) section 2–403, as enacted in Colorado as section 4–2–403, C.R.S. (2006). The trial court found that the UCC provision entitled Roberts, as a good faith purchaser for value, to retain ownership of the car. On appeal, the district court, acting as an appellate court, upheld the trial court's decision.

We agree with the district court's conclusion and hold that, although "theft" in our criminal code includes theft by deception, UCC section 2–403 abrogates section 18–4–405 so that "theft" in that provision does not include theft in which an owner voluntarily relinquishes property to a thief under a transaction of purchase.

Thus we affirm the district court and hold that Tammy Roberts, as a good faith purchaser for value, obtained good title to the car under C.R.S. section 4–2–403.

Frie, Arndt & Danborn P.C., Paul R. Danborn, Arvada, Colorado, Attorneys for Petitioner.

## II. Facts and Proceedings Below

West agreed to sell his car, a 1975 Corvette, to a man representing himself as Rob-

ert Wilson. In exchange for a cashier's check, West signed over the Corvette's title to Wilson and gave him the car. Ten days later, when West learned that the cashier's check was a forgery, he filed a stolen vehicle report with police. However, the police did not locate Wilson or the Corvette, and the case grew cold. Nearly two and a half years later, West asked the police to run a check on the Corvette's vehicle identification number. The check yielded the name and address of Tammy Roberts. Roberts, who holds certificate of title to the Corvette, had purchased the vehicle from her brother, who, in turn, had purchased it in response to a newspaper ad. West filed suit against Roberts in county court to establish legal ownership of the Corvette under Colorado's stolen property statute, C.R.S. section 18–4–405.[1]

The trial court determined that the stolen property statute did not apply in this case. Instead, the court found that the UCC, specifically C.R.S. section 4–2–403, governed the transaction and that Roberts was the rightful owner.[2]

In reaching the conclusion that section 2–403 of the UCC applies in this case and that Roberts was the rightful owner of the Corvette, the trial court relied on *Keybank Nat'l Ass'n v. Mascarenas*, 17 P.3d 209 (Colo.App.

2000). In *Keybank*, the court of appeals held that a theft in which the owner willingly entrusts his property to another is different than "ordinary theft," in which the owner is unaware of the taking and does not intend to part with the property. *Id.* at 214. The trial court found that, under the *Keybank* holding, theft by deception or fraud is not covered under the stolen property statute if the theft involves a transfer of goods in which the seller voluntarily parts with the goods in exchange for something else. Accordingly, the trial court held that the UCC applies in this case and that, because title can be legally transferred to a bona fide purchaser even if the transferor did not have proper authority to do so, Roberts possessed good title to the Corvette.

On appeal, the district court, acting as an appellate court, upheld the trial court's decision on two grounds. First, the court considered whether a theft had occurred for the purposes of the stolen property statute. Citing *Keybank*, the court found that a theft has not taken place if, as in this case, the owner was aware of a taking and had intended to part with the property. Thus, the court found the stolen property statute does not apply in this case. Second, the court found that the trial court correctly applied section 2–403 of the UCC. Even though the cashier's

1. The statute provides, in pertinent part:
All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action ... against any person in whose possession he finds the property.
§ 18–4–405, C.R.S. (2006).

2. The provision of the UCC provides, in pertinent part:
**Power to transfer—good faith purchase of goods—"entrusting."** (1) A purchaser of goods acquires all title which his transferor had or had power to transfer; except, that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though:
(a) The transferor was deceived as to the identity of the purchaser, or
(b) The delivery was in exchange for a check which is later dishonored, or

(c) It was agreed that the transaction was to be a "cash sale", or
(d) The delivery was procured through fraud punishable as larcenous under the criminal law.
(1.5) Notwithstanding any other provision of this section, when livestock have been delivered under a transaction of purchase and on the accompanying brand inspection certificate or memorandum of brand inspection certificate the seller has conspicuously noted that payment of the consideration for the transaction has not been received, the buyer does not have power to transfer good title to a good faith purchaser for value until payment is made.
(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
§ 4–2–403, C.R.S. (2006).

check from Wilson was later dishonored, the court held that Roberts was a bona fide purchaser and acquired a full property interest in the Corvette.

We accepted certiorari to reconcile the apparent conflict between the two statutes—section 2–403 of the UCC and the stolen property statute—and to determine which statute applies in this case.[3] We first examine the stolen property statute and UCC section 2–403 and determine whether either statute applies in this case. We then reconcile the apparent conflict between the two statutes.

## III. Analysis

### The Stolen Property Statute

■ We begin by examining whether the stolen property statute applies in this case. Matters of statutory interpretation are questions of law, which we review de novo. *E.g., Ryals v. St. Mary–Corwin Reg'l Med. Ctr.*, 10 P.3d 654, 659 (Colo.2000). When interpreting a statute, we look first to its plain language. *E.g., Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005).

■ The stolen property statute permits the rightful owner of stolen property to recover that property from the possession of another person. § 18–4–405, C.R.S; *Cedar Lane Invs. v. Am. Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879, 882 (Colo. App.1996). For the stolen property statute to apply, "the owner of the property must prove that the taker ... committed acts constituting at least one of the statutory crimes" listed within the statute. *Itin v. Ungar*, 17 P.3d 129, 134 (Colo.2000). However, the statute itself does not define theft. *Id.* at 133. Because the stolen property statute is contained in the Colorado Criminal Code, terms contained in that statute may be defined within the scheme of the statutory framework. *Id.* The criminal code defines theft as "knowingly obtain[ing] or exercis[ing] control over anything of value of another without authorization, *or by threat or*

*deception,* and ... [i]ntend[ing] to deprive the other person permanently of the use or benefit of the thing of value." § 18–4–401(1)(a), C.R.S. (2006) (emphasis added). Theft by deception as set forth in subsection 18–4–401(1)(a) requires proof that the victim relied on a swindler's misrepresentations, which caused the victim to part with something of value. *People v. Warner*, 801 P.2d 1187, 1189–90 (Colo.1990).

■ The language of the stolen property statute states that the statute applies to property obtained by theft and that even a good faith purchaser of such property may be divested of it. The definition of theft contained in section 18–4–401 is clear. Use of the word "or" in a statute is presumed to be disjunctive. *Armintrout v. People*, 864 P.2d 576, 581 (Colo.1993) (citations omitted). Thus, though a theft may occur when one takes property without the owner's authorization, the use of the word "or" indicates that a theft may also occur if the property is taken by deception, even with the owner's authorization.

■ The trial court found that Wilson deceived West into relinquishing the Corvette and its title in exchange for a fraudulent cashier's check and, accordingly, that Wilson could be charged with theft. A theft therefore occurred for the purposes of the stolen property statute. Hence, based upon the plain language of the stolen property statute and section 18–4–401, we determine that the stolen property statute appears to apply in this case.

Having analyzed the stolen property statute, we now examine section 2–403 of the UCC.

### The Uniform Commercial Code

West asserts that the trial and district courts should not have applied section 2–403 of the UCC in this case. He offers two primary arguments in support of his position: (1) the entrustment provisions of section 2–403 only protect those who purchase from

---

**3.** The specific question on which we granted certiorari is whether the original owner of a vehicle that he relinquished due to fraud should be allowed to recover the vehicle from a bona fide purchaser, thereby necessitating overturning *Keybank v. Mascarenas,* 17 P.3d 209 (Colo.App. 2000).

merchants; and (2) subsection 2–403(1) is also inapplicable because West did not pass voidable title to Wilson, the initial purchaser of the Corvette. We address each argument in turn.

West argues that, because Wilson was not a merchant, no entrustment occurred under section 2–403 and, therefore, Roberts did not acquire valid title to the car. We agree that an entrustment did not occur, which calls upon us to clarify the statute's relevance in merchant and non-merchant transactions.

We again turn to the statutory language as the starting point in our analysis. *E.g., Spahmer,* 113 P.3d at 162. The language of section 2–403 does not indicate that all transactions falling within the statute's purview must involve a merchant; indeed, subsection (2) is the only portion of the statute that mentions the word "merchant."

■ Comments to a statute are relevant in its interpretation. *See People v. Yascavage,* 101 P.3d 1090, 1092 (Colo.2004). As such, we turn to the official comments to section 2–403 for additional guidance in determining whether the statute applies to transactions involving non-merchants. The language of the official comments to section 2–403 strongly suggests that subsections (2), (3), and (4) apply specifically to merchant transactions, while subsection 2–403(1) is applicable to non-merchant transactions. Comment 2 states that subsections (2), (3), and (4) serve to protect persons who buy "in ordinary course out of inventory."[4] The UCC defines a "buyer in ordinary course of business" as someone who buys "from a person ... in the business of selling goods of that kind." § 4–1–201(9), C.R.S. (2006). Comment 4 indicates that the rights of purchasers who are not buyers in ordinary course—thus including those who did not buy from a merchant—are addressed in subsection (1) of the statute.[5]

Comment 1, which applies to subsection (1), states that the provision protects "good faith purchaser[s] for value." Within the context of the UCC, the concept of good faith purchaser for value does not appear to require that the purchaser buy from a merchant or dealer. Several provisions of the UCC must be combined to define good faith purchaser for value. The UCC defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." § 4–1–201(19), C.R.S. A purchaser is one who "takes by purchase." § 4–1–201(30), C.R.S. Purchase, in turn, means "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." § 4–1–201(29), C.R.S. And a person gives value, generally, by providing "consideration sufficient to support a simple contract." § 4–1–204(4), C.R.S. (2006). The Kentucky Court of Appeals offered a more concise definition of good faith purchaser for value in the context of section 2–403 as "one who takes by purchase getting sufficient consideration to support a simple contract, and who is honest in the transaction of the purchase." *United Rd. Machinery Co. v. Jasper,* 568 S.W.2d 242, 244 (Ky.Ct.App.1978).

■ When a Colorado statute is patterned after a model code, this court may draw upon outside authority in interpreting the provision. *E.g., Szaloczi v. John R. Behrmann Revocable Trust,* 90 P.3d 835, 838–39 (Colo. 2004). Leading treatises on the UCC support an interpretation of subsection 2–403(1) as applying beyond merchant transactions. The *Uniform Commercial Code Series* explains that, under subsection (2), a protected purchaser must be a buyer in the ordinary course of business, which is different than the type of purchaser addressed in subsection (1):

---

4. The comment states, in pertinent part, that "[t]he many particular situations in which a buyer in ordinary course of business from a dealer has been protected against reservation of property or other hidden interests are gathered by subsections (2)–(4) into a single principle protecting persons who buy in ordinary course out of inventory." § 4–2–403 official cmt. 2, C.R.S.

5. "Except as provided in subsection (1), the rights of purchasers other than buyers in ordinary course are left to [other Articles]." § 4–2–403 official cmt. 4, C.R.S. (2006).

It should be noted that [a buyer in the ordinary course of business] is not the equivalent of the common law "bona fide purchaser" or the concept of "good faith purchaser for value" used in the voidable title situations addressed by Section 2–403(1).[6] The principal difference between "buyer in the ordinary course of business" and these other terms lies [in] the fact that the buyer in the ordinary course must buy goods from a merchant in the business of selling goods of that kind and must buy them in the usual way in which such items of inventory are bought.

2 William D. Hawkland, *Uniform Commercial Code Series* § 2–403:7 (1982).

White & Summers's treatise also suggests that subsection (1) applies to non-merchant transactions. As its title implies,[7] section 2–403 addresses three separate topics: (1) "the general powers of a transferor of goods to transfer title or interests [in subsection (1) ]"; (2) "the title of a good faith purchaser of goods [in subsection (1) ]"; and (3) "the rights of a buyer in ordinary course *from a merchant* to whom goods have been entrusted [in subsections (2) and (3) ]." 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 3–12 (4th ed.1995) (emphasis added). According to another treatise, for subsection 2–403(1), "the good faith of the purchaser is the focus of inquiry." Robert A. Hillman et al., *Common Law and Equity Under the Uniform Commercial Code* ¶ 5.04[1] (1985). In contrast, Hillman's analyses of subsections 2–403(2) and (3) indicate that they apply to merchant transactions. For example, Hillman explains that the purpose of subsection 2–403(2) is " 'to enhance the reliability of commercial sales by merchants.' " *Id.* ¶ 5.04[2] (quoting *Porter v. Wertz*, 53 N.Y.2d 696, 439 N.Y.S.2d 105, 421 N.E.2d 500 (1981)).

Finally, we note that courts in other jurisdictions have applied UCC section 2–403 to non-merchant sales transactions. *E.g., Cooper v. Pac. Auto. Ins. Co.*, 95 Nev. 798, 603 P.2d 281 (1979); *Dartmouth Motor Sales, Inc. v. Wilcox*, 128 N.H. 526, 517 A.2d 804 (1986); *Atlas Auto Rental Corp. v. Weisberg*, 54 Misc.2d 168, 281 N.Y.S.2d 400 (N.Y.Civ. Ct.1967); *Creggin Group, Ltd. v. Crown Diversified Indus. Corp.*, 113 Ohio App.3d 853, 682 N.E.2d 692 (1996).

■ Because subsection 2–403(1) does not refer to merchant transactions or buyers in ordinary course, because the definition of good faith purchaser for value does not require purchase from a merchant or dealer, and because the official comments to UCC section 2–403 indicate that only subsections (2), (3), and (4) apply solely to merchant transactions, we conclude that subsection 2–403(1) applies to non-merchant transactions. Thus, we continue our analysis to determine whether subsection 2–403(1) applies in this case.

West also contends that, because the Corvette was stolen, he did not pass voidable title to the initial purchaser-cum-thief, Wilson.[8] Thus, argues West, Roberts could not have obtained good title under subsection 2–403(1). West's primary argument in support of his assertion that he did not pass voidable title is that no purchase took place because he relinquished title to the car in exchange for a worthless cashier's check. We disagree.

■ Subsection 2–403(1) protects good faith purchasers for value. The provision requires that goods be "delivered under a transaction of purchase." § 4–2–403(1), C.R.S. (2006). As we have noted, under the UCC, a purchase is broadly defined as "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or *any other voluntary transaction creating an interest in property.*" § 4–1–201(29), C.R.S. (emphasis added). Voluntary means "proceeding from the will or from one's own choice or consent." *Merriam–Webster's Collegiate Dictionary* 1402

---

**6.** The UCC model statute analyzed in the treatise is identical to C.R.S. subsection 4–2–403(1).

**7.** Section 2–403 is entitled, "Power to transfer—good faith purchase of goods—'entrusting.' " § 4–2–403, C.R.S. (2006).

**8.** Black's Law Dictionary defines voidable as "valid until annulled." *Black's Law Dictionary* 1605 (8th ed.2004).

(11th ed.2004). West freely chose to deliver the car and its title to Wilson. And he chose to do so even though he had neither attempted to cash the cashier's check nor obtained contact information for Wilson. Hence, we conclude that West's transfer of the Corvette and its title in exchange for a cashier's check, even though a worthless counterfeit, constitutes a voluntary transaction that is subject to subsection 2–403(1).

Indeed, the plain language of the statute itself bolsters this conclusion. Subsection 4–2–403(1) provides, in pertinent part, that "[w]hen goods have been delivered under a transaction of purchase, the purchaser has such power [to transfer good title to a good faith purchaser for value] even though ... [t]he delivery was in exchange for a check which is later dishonored, or ... [t]he delivery was procured through fraud punishable as larcenous under the criminal law." § 4–2–403(1)(b), (d), C.R.S. This language indicates that a transaction of purchase is not thwarted simply because a purchaser failed to provide payment that met the seller's expectation. To employ West's rationale that exchanging goods for a fraudulent cashier's check does not constitute a delivery under a transaction of purchase would render the provision meaningless.

The addition of subsection 1.5 by the legislature to Colorado's UCC statute also indicates that a transaction of purchase could encompass a fraud-based exchange. The General Assembly added subsection 1.5, which is not part of the UCC model code, in 1975. That provision specifies that, if a seller of livestock has not received payment, the purchaser "does not have power to transfer good title to a good faith purchaser for value until payment is made." § 4–2–403(1.5), C.R.S. We deem it significant that subsection 1.5 demarcates livestock transactions; its only effect is to require payment before a buyer has power to transfer title. This amendment to the Colorado UCC statute suggests that, by requiring payment before the power to transfer can attach, livestock transactions are to be treated differently than other transactions controlled by the statute. Therefore it is logical to conclude that a purchaser of non-livestock goods pos-

sesses the power to transfer those goods upon receipt of the goods from the seller, even if the purchaser's payment is invalid.

Various authorities provide additional support for our conclusion. "[T]he general rule seems to be that the physical delivery of the goods to a transferor-purchaser by the true owner sufficiently empowers that transferor-purchaser to transfer good title to a good faith purchaser for value even though the delivery was in exchange for a check which was later dishonored." 3 Patricia F. Fonseca & John R. Fonseca, *Williston on Sales* § 23:38 (5th ed.1994). "Subsection 1(d) of 2–403 provides that even where delivery was procured through criminal fraud, voidable title passes." White & Summers, *supra*, § 3–12(b). The argument that the term "transaction of purchase" indicates that the true owner did not intend to enter such a fraudulent transaction fails "in light of the clear policy of Section 2–403(1) to enable the good-faith purchaser to prevail." Hillman, *supra*, ¶ 5.04[2] n. 95 (citing 3A R. Dusenberg & L. King, *Sales & Bulk Transfers Under the Uniform Commercial Code* § 10.06[1] (1982)).

We note that courts in other jurisdictions have applied subsection 2–403(1) to similar types of fraudulent, though voluntary, transactions. "A transfer that is fraudulently induced ... is considered a 'purchase' under the Code, and meets the threshold of being 'voluntary.'" *Demoulas v. Demoulas,* 428 Mass. 555, 703 N.E.2d 1149, 1164 (1998) (invoking subsection 2–403(1) to determine whether defendants were bona fide purchasers in a case in which a stock owner was defrauded into voluntarily transferring the stock). *Accord Cooper,* 603 P.2d at 283 (finding implicitly that a man who purchased a car with an invalid cashier's check obtained voidable title); *Kenyon v. Abel,* 36 P.3d 1161, 1165–66 (Wyo.2001) (explaining that subsection 2–403(1)(d) effectively provides that "voidable title is created whenever the transferor voluntarily delivers goods to a purchaser even though that delivery was procured through fraud" in ultimately holding that no voluntary transfer had occurred); *Creggin Group, Ltd.,* 682 N.E.2d at 696–97 (holding that an exchange in which a man purchased

an airplane using an invalid check was a transaction of purchase sufficient to confer voidable title to the purchaser regardless of the purchaser's larcenous intent).

Having concluded that West delivered the Corvette under a transaction of purchase, we continue our examination of subsection 2–403(1) in order to determine if Roberts obtained good title to the Corvette. The provision allows a person with voidable title to transfer good title to a good faith purchaser for value even under certain conditions, including when the transferor paid in cash or with a check that was later dishonored, or when the transferor otherwise procured the delivery through fraud punishable under criminal law. § 4–2–403(1), C.R.S. Specifically, subsection (1)(d) states that a good faith purchaser may obtain good title to property even if the transferor acquired the property "through fraud punishable as larcenous under the criminal law." We begin by noting that West does not dispute that Roberts is a good faith purchaser for value.

■ Section 18–4–403 of the Colorado Criminal Code provides that any Colorado law referring to larceny "shall be interpreted as if the word 'theft' were substituted therefore." As the trial court found, Wilson could be charged with theft for deceiving West into relinquishing the Corvette and its title in exchange for a fraudulent cashier's check. Accordingly, Wilson procured the Corvette through fraud punishable as larcenous under the criminal law. Because he obtained the car under a transaction of purchase, Wilson obtained voidable title to the car despite the fact that he paid with a fraudulent cashier's check. As such, Roberts, a subsequent good faith purchaser for value, obtained good title to the Corvette under subsection 2–403(1)(d).[9] This result is opposite of that reached under the stolen property statute,

which, pursuant to our earlier analysis, would allow West to recover the car from Roberts.

## IV. Application

Because both the stolen property statute and subsection 2–403(1) of the UCC appear to apply in this case, we must next determine which statute prevails. When two statutes conflict, this Court favors a construction that avoids conflict between the provisions. *People v. Mojica–Simental*, 73 P.3d 15, 17–18 (Colo.2003). If we cannot reconcile statutes passed at different legislative sessions, the statute with the latest effective date controls. § 2–4–206, C.R.S. (2006); *Slater v. McKinna*, 997 P.2d 1196, 1199 (Colo.2000). And the more specific provision generally prevails over the more general provision. *See* § 2–4–205, C.R.S. (2006); *People v. Smith*, 971 P.2d 1056, 1058 (Colo.1999).

■ The General Assembly enacted the UCC in 1965. The first version of the stolen property statute, which is effectively identical to the current provision,[10] was enacted in 1861 as a territorial law. The UCC provision, which addresses in detail several types of scenarios, is more specific than the stolen property statute. We therefore hold that UCC section 2–403 prevails over the stolen property statute.

Further analysis bolsters our holding. The general rule, embodied in the stolen property statute, is that "[a] thief has no title and can pass none, not even to a buyer in the ordinary course." Fonseca & Fonseca, *supra*, § 23:35. *See also, e.g.*, Thomas M. Quinn, *Uniform Commercial Code Commentary and Law Digest* ¶ 2–403[A][5] (1978) ("Where the goods are stolen from the original owner, both the common law and the Code preserve the original owner's ownership rights ... notwithstanding subsequent sales."). However, UCC section 2–403 provides an exception to that general rule.

---

9. Subsections (1)(b) and (1)(c) might also be relevant, depending on whether a cashier's check is considered cash, as West implies, or a check. However, we need not analyze this issue because we conclude that subsection (1)(d) applies in this case.

10. The original version of the statute provided that "[a]ll property obtained by larceny, robbery

or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of purchaser, or not, shall divest the owner of his right to such property; such owner may maintain his action, not only against the felon, but against any person in whose possession he may find the same." Terr. Laws of Colo. Div. VI, Sec. 58 (1861).

Comment 1 to section 2–403 hints at such an exception in the context of subsection (1), explaining that "subsection (1) provides specifically for the protection of the good faith purchaser for value in a number of specific situations which have been troublesome under prior law." § 4–2–403 official cmt. 1, C.R.S. Each of the specific situations listed in subsection 2–403(1) involves a voluntary transfer of goods, even though the intent to transfer the goods may have been induced by fraud. The language of the statute leads to the conclusion that goods delivered under a transaction of purchase, even when the seller is fraudulently induced to do so, can then be validly sold to a good faith purchaser for value, whereas goods that are stolen but not delivered under a transaction of purchase cannot.

Again, treatises on the UCC support this conclusion. White and Summers explain that theft by fraud should be distinguished from robbery-type theft because the original seller has a better opportunity to prevent that type of theft:

> In general voidable title passes to those who lie in the middle of the spectrum that runs from best faith buyer at one end to robber at the other. These are buyers who commit fraud, or are otherwise guilty of naughty acts (bounced checks), but who conform to the appearance of a voluntary transaction; they would never pull a gun or crawl in through a second story window. Presumably these fraudulent buyers get voidable title from their targets, but second story men get only void title because the targets of fraud are themselves more culpable than the targets of burglary.

White & Summers, *supra*, § 3–12(b). *See also* Quinn, *supra*, ¶ 2–403[A][5] ("Where the original owner parts with the goods voluntarily in circumstances which, while deplorable, do not constitute outright theft, there is always the chance that the transferee will acquire apparent ownership or 'voidable title' and, thanks to this altered state, may be able to pass along better title to a good faith purchaser than he himself may have."). By relinquishing possession of the goods to the buyer, even when fraudulently induced to do so, the original seller cloaks the "thief" with the apparent authority to sell the goods. Fonseca & Fonseca, *supra*, § 23:35.

We note that other jurisdictions have distinguished theft by fraud that results in a voluntary transfer of the stolen property from theft by wrongful taking. *E.g., Kenyon,* 36 P.3d at 1165–66; *Demoulas,* 703 N.E.2d at 1164. This Court has also hinted at that distinction, explaining that the stolen property statute "allows an owner to regain only property 'obtained by theft, robbery, or burglary' rather than any property that has been 'wrongfully taken or detained.'" *In re Marriage of Allen,* 724 P.2d 651, 656 (Colo. 1986). Indeed, our court of appeals made this distinction in the context of section 2–403 in *Keybank,* upon which the trial and district courts relied in finding that Roberts acquired good title to the Corvette. Our decision today serves to extend the *Keybank* distinction beyond the context in which it was rendered—the entrustment provisions of subsections 2–403(2) and (3)—to transactions under subsection 2–403(1). However, we disagree with the *Keybank* rationale to the extent that it suggests that a distinction between theft and fraud exists within our criminal code.

We therefore hold that, although "theft" in our criminal code includes theft by deception, UCC section 2–403 abrogates the stolen property statute so that "theft" in that provision does not include any theft in which an owner voluntarily relinquishes property to a thief under a transaction of purchase.

■ We acknowledge that such a rule can, as in this case, result in loss to an innocent party. But a determination that West is entitled to recover the car would also be a determination that Roberts, another innocent party, must relinquish a vehicle that she purchased in good faith. The policy behind subsection 2–403(1) is to protect the party least able to protect herself—the good faith purchaser for value.

> Where an owner has voluntarily parted with possession of his chattel, even though induced by a criminal act, a bona fide purchaser can acquire good title, under the theory that where one of two innocent parties must suffer because of the wrongdoing of a third person, the loss must fall

on the party who by his conduct created the circumstances which enabled the third party to perpetuate the wrong.

*Anderson Contracting Co., Inc. v. Zurich Ins. Co.*, 448 So.2d 37, 38 (Fla.Dist.Ct.App. 1984). The original seller is better positioned to take precautions to prevent loss than a later purchaser. For example, West could have insisted upon cash or ensured that the check would clear before relinquishing the car and title. On the other hand, to place the onus on the good faith purchaser to fully investigate every purchase in order to determine whether it originated in fraud would unduly burden trade. *See, e.g.,* Fonseca & Fonseca, *supra,* § 23:47. We have acknowledged that this tenet "is in accord with the overall policy of the UCC's entrustment provision: to restrict impediments to the free flow of commerce when buyers in the ordinary course of business are involved." *Cugnini v. Reynolds Cattle Co.*, 687 P.2d 962, 967 (Colo.1984). It is equally applicable to good faith purchasers for value under subsection 2–403(1).

## V.   Conclusion

For the reasons stated, we affirm the judgment of the district court acting as an appellate court.

Justice EID dissents, Justice COATS joins in the dissent.

Justice EID, dissenting.

The factual scenario presented in this case—where a third party obtains property through theft by fraud from the owner and subsequently sells it to a good faith purchaser—is covered by both the stolen property statute (§ 18–4–405, C.R.S.(2006)) and section 4–2–403 of the Uniform Commercial Code. Under the stolen property statute, the defrauded seller gets his property back; the UCC lets the good-faith purchaser keep it. We must decide which statute controls.

While I agree with the majority that the two statutes conflict, maj. op. at 1044–1045, I disagree with its resolution of that conflict in favor of the UCC provision. "When statutes dealing with the same or related subjects cannot be reconciled, a more specific statute

prevails as an exception to a general statute unless the general provision is the later adoption and the manifest legislative intent is that the general provision prevail." *B.G.'s, Inc. v. Gross,* 23 P.3d 691, 696 (Colo.2001) (citing § 2–4–205, C.R.S. (2000) and *Smith v. Zufelt,* 880 P.2d 1178, 1183 (Colo.1994)). The majority finds that section 4–2–403 is the "more specific" statute in this case and therefore holds that the UCC provision prevails because it "addresses in detail *several types of scenarios.*" Maj. op. at 1044 (emphasis added). Indeed, I agree that Colorado's version of the UCC covers the entire landscape of commercial transactions, from Sales, § 4–2–101, C.R.S. (2006), and Negotiable Instruments, § 4–3–101, C.R.S. (2006), to Investment Securities, § 4–8–101, C.R.S. (2006), and Secured Transactions, § 4–9–101, C.R.S. (2006). As the majority points out, our version of the UCC even includes a provision (one that was not in the model act) governing livestock transfers. *See* maj. op. at 1043 (citing § 4–2–403(1.5), C.R.S. (2006)).

But the comprehensive nature of the UCC actually goes toward showing its generality, not its specificity. *See B.G.'s,* 23 P.3d at 696 (noting that a particular statute was more general, and hence did not control, because it applied to a larger class of cases). The stolen property statute deals with one subject and one subject only: who gets to keep stolen property. And it does so in a single and quite specific sentence: "All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property." C.R.S. § 18–4–405.

It is true, as the majority points out, that the UCC was adopted by this state in 1965, and the stolen property statute was enacted more than a hundred years earlier as territorial law. Maj. op. at 1044–1045 & 1044 n. 10. Significantly, however, the General Assembly has revisited and made substantive changes to the stolen property statute on two occasions since that time. *See* 1973 Colo. Sess. Laws 536; 1987 Colo. Sess. Laws 668. In 1973, it amended the remedial portion of the statute to state that "treble damages and attorney's fees shall not be recoverable from

a good faith purchaser or good faith holder of the property," leaving the owner to recover only the property itself from the good-faith purchaser. 1973 Colo. Sess. Laws 536, 536. Fourteen years later, the General Assembly revisited the stolen property statute to allow the owner to recover at least two hundred dollars in statutory damages from the thief, and again amended the statute to make clear that recovery of the stolen property was the sole remedy available to the owner as against a good-faith purchaser of the property. 1987 Colo. Sess. Laws 668, 668.

While these amendments do not impact the theft victim's retained ownership in the stolen property—ownership that has been recognized in Colorado since 1861—they unmistakably demonstrate that the legislature has repeatedly considered the stolen property statute *after* the UCC was adopted. Thus, the stolen property statute is arguably the "later adoption." At the very least, it is difficult to conclude from the legislature's relatively recent attention to the stolen property statute that its intent was "manifest" that the UCC control the outcome in cases like the one before us today. *See B.G.'s*, 23 P.3d at 696; § 2–4–205, C.R.S. (2006).

The majority makes clear that, in its view, resolution in favor of the UCC makes for better public policy. As it points out, the owner is "better positioned to take precautions to prevent loss than a [good-faith] purchaser ... On the other hand, to place the onus on the good faith purchaser to fully investigate every purchase in order to determine whether it originated in fraud would unduly burden trade." Maj. op. at 1046. That may be so, but it is for the legislature, not us, to decide. In the future, the legislature may very well expressly resolve the conflict between the two statutes in the UCC's favor. Until it does so, however, we must look at what it has done up to this point, which has been to adopt and amend a narrow statute that particularly targets the very factual scenario raised by this case, and

nothing more. Because I believe the more specific stolen property statute controls over the more general UCC provision, I respectfully dissent from the majority's opinion.

I am authorized to state that Justice COATS joins in this dissent.